RECEIVED

JUN 1 0 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| AUTOMOTIVE LEASING SPECIALISTS, L.L.C. | CIVIL ACTION NO. 07-1399 |
| VERSUS | JUDGE DOHERTY |
| IDA LITTLE | MAGISTRATE JUDGE HILL |

## MEMORANDUM OPINION AND ORDER

Appellant Automotive Leasing Specialists, L.L.C. ("ALS") brings this appeal, pursuant to 28 U.S.C. §158(a) or (b),[1] from a final Order Confirming Chapter 13 Plan of the United States Bankruptcy Court for the Western District of Louisiana entered July 18, 2007 in the matter entitled *In re: Ida Little*, Case No. 07-50462. [BR Doc. 28]. The sole issue on appeal is whether a lease agreement executed by the parties creates a security interest.

### I.     Factual and Procedural Background

On or about November 1, 2004, the parties entered into a "Motor Vehicle Lease Agreement"(the "Lease Agreement") with respect to a 1998 Ford Mustang bearing Vehicle Identification Number 1FAFP404XWF217308. The Lease Agreement establishes a lease term and a monthly payment schedule to be paid by the debtor, Ida Little (hereinafter referred to as the "Debtor"), and further shows that the Debtor made a $1,200.00 down payment on the vehicle. The Lease Agreement also contains the following provisions:

  8.     **EARLY TERMINATION:**   You may have to pay a

---

[1] This Court notes that although ALS brings its appeal pursuant to "28 U.S.C. §§158(a) or (b)," in its appellate brief, ALS alleges the jurisdiction of this Court is conferred by 28 U.S.C. §158(d) and 28 U.S.C. §1291. For the reasons explained in the section of this ruling entitled "Jurisdiction," this Court concludes it has jurisdiction under Section 158(a). Therefore, consideration of whether the Court has jurisdiction pursuant to 28 U.S.C. §1291 is unnecessary.

substantial charge if you end this Lease early. <u>The charge may be up to several thousand dollars.</u> The actual charge will depend upon when the Lease is terminated. The earlier you end the Lease, the greater this charge will be.

10. **PURCHASE OPTION AT END OF LEASE TERM:** You have the option at the End of the Lease Term to purchase the Vehicle in cash for: (a) ___ $206.00 ___; plus (b) applicable taxes, title transfer fees, and other official fees and charges; plus (c) any amounts necessary to repair the Vehicle to conform with legal requirements for sale (unless you agree to purchase the Vehicle for parts only).

24. **EARLY TERMINATION:** You may terminate this Lease early if you are not in default by notifying Assignee in writing and returning the Vehicle to Lessor at Lessor's address, and by paying the following: (a) an early termination fee of $350; plus (b) the difference, if any, between the then Unpaid Adjusted Capitalized Cost and the Vehicle's then Fair Market Wholesale Value; plus (c) all other amounts then due under this Lease.

31. **TRUE LEASE:** It is declared to be the intent of the Lessee, Lessor, and the Assignee that this Lease shall for all purposes constitute a "true lease" of the Vehicle subject to the Louisiana Lease of Movables Act (La. R.S. §§ 9:3301, *et seq.*), and not a "financed lease" or a secured transaction/security interest under the Louisiana Commercial Laws (La. R.S. §§ 10:1-101, *et seq.*). However, if for some reason, a court or arbitrator may determine that this Lease constituted a "financed lease", you grant Lessor and Assignee a security interest in the Vehicle, and in all proceeds derived from this Vehicle.

On or about April 20, 2007, the Debtor filed a voluntary petition under Chapter 13 of the

Bankruptcy Code[2] in the United States Bankruptcy Court for the Western District of Louisiana. [BR

---

[2] As the Fifth Circuit explained in *In re Bartee*, 212 F.3d 277 (5th Cir. 2000):

> Chapter 13 was designed to facilitate the adjustment of the debts of individuals whose regular income allows them to fund a flexible repayment plan. *See* Lawrence P. King, et al., Collier on Bankruptcy §1322.01 (15th ed.1999) (hereinafter "Collier on Bankruptcy"). The great benefit to a Chapter 13

2

Doc. 1]. In response, ALS filed an objection to the Chapter 13 Plan on three grounds: (1) with respect to the vehicle in question, the Debtor listed the Creditor/Lessor to be "Nissan of Opelousas" when it should have listed "Automotive Leasing Specialists, L.L.C.;" (2) the Debtor incorrectly identified the Lease Agreement as a secured transaction rather than a lease; and (3) the Debtor failed to list in the Chapter 13 Plan that she was in arrears to ALS in the amount of $775.51.

On July 18, 2007, a confirmation hearing was held before the Bankruptcy Court in which ALS's objection to the Chapter 13 Plan was heard. After hearing argument, the Bankruptcy Court denied ALS's objection and confirmed the Plan. [BR Doc. 22]. An order confirming the Plan was filed into the record of the Bankruptcy Court on July 31, 2007. [BR Doc. 28].

On August 1, 2007, ALS filed a Motion to Reconsider in the Bankruptcy Court, seeking reconsideration of the Bankruptcy Court's July 18, 2007 Order denying ALS's objection and confirming the Plan. [BR Doc. 29]. A hearing on ALS's motion for reconsideration was scheduled before the Bankruptcy Court on October 24, 2007. [BR Doc. 36]. Prior to the hearing, however, on August 21, 2007, ALS filed a Notice of Appeal in this Court, appealing the Bankruptcy Court's July 18, 2007 Order denying ALS's objection and confirming the Plan. [Doc. 1].

At the October 24, 2007 hearing, the Bankruptcy Court granted the Motion for Reconsideration only to the extent that the Debtor was ordered to correct the name of the creditor from "Nissan of Opelousas" to "Automotive Leasing Specialists, L.L.C." in the Plan. In all other

---

bankruptcy is that a debtor can preserve existing assets, all the while granting creditors a ratable recovery from future income unavailable under Chapter 7 liquidation. *See Foster v. Heitkamp ( In re Foster ),* 670 F.2d 478, 483 (5th Cir.1982); *Kitchens v. Georgia Railroad Bank and Trust Co.,* 702 F.2d 885, 887 (11th Cir.1983). Following the completion of all payments specified under the plan, the debtor is granted a liberal discharge. *See id.; see also* 11 U.S.C. § 1328.

3

respects, the motion was denied, and the Debtor was ordered to file an amended plan within ten days. [BR Docs. 41, 42]. On October 25, 2007, the Debtor amended her Chapter 13 Plan, removing "Nissan of Opelousas" as the owner of the vehicle and replacing it with "Automotive Leasing Specialists, L.L.C." as ordered by the Bankruptcy Court. [BR Doc. 39]. Because the Plan still listed the Lease Agreement between the Debtor and ALS as a secured transaction rather than a lease, on November 6, 2007, ALS filed an additional objection to the Chapter 13 Plan, again arguing the Lease Agreement should be listed as a lease rather than a secured transaction. [BR Doc. 49].

Thereafter, on November 14, 2007, ALS filed an "Amended Notice of Appeal" in this Court, "regarding the Order denying [ALS's] Objection to Chapter 13 Plan and denying a portion of its Motion to Reconsider, specifically addressing whether the agreement between the debtor and [ALS] should be listed on the Chapter 13 Plan as a lease agreement or a security interest." [Doc. 7].

On December 12, 2007, the Bankruptcy Court overruled the objection of ALS and continued the confirmation hearing to January 9, 2008. [BR Doc. 54]. On January 8, 2008, ALS filed yet another "Amended Notice of Appeal," appealing from "the judgment, order, or decree of the Bankruptcy Judge, to include the Order issued by the Bankruptcy Court on December 12, 2007 again denying [ALS's] Objection to Chapter 13 Plan, addressing whether the agreement between the debtor and [ALS] should be listed on the Chapter 13 Plan as a lease agreement or a security interest." [Doc. 9]. On January 17, 2008, the Bankruptcy Court issued a First Amended Order Confirming Chapter 13 Plan. [BR Doc. 61].[3]

Thus, before the Court at this time is ALS's Notice of Appeal, appealing both the Bankruptcy

---

[3] Although not originally included in any submissions to the Court, a copy of the Bankruptcy Court's January 17, 2008 Order was submitted by counsel at the request of the Court and is attached hereto, and made a part of the record in this case, as Exhibit "A." A copy of the July 31, 2007 Order is also included.

Court's July 18, 2007 and January 17, 2008 Orders confirming the Debtor's Plan over ALS's objection that the Lease Agreement should be listed in the Plan as a true lease rather than a secured transaction.

## II.   Jurisdiction

Although neither party has briefed the issue in any detail, ALS contends this Court's jurisdiction over the instant matter is conferred by, alternately, 28 U.S.C. §§158(a), (b), and/or (d), as well as 28 U.S.C. §1291.[4]  Neither party disputes this Court's jurisdiction under any of the foregoing provisions.

Pursuant to 28 U.S.C. §158(a):

The *district courts of the United States* shall have jurisdiction to hear appeals

    (1) *from final judgments, orders, and decrees;*

    (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and

    (3) with leave of the court, from other interlocutory orders and decrees;

and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges

---

[4] Section 1291 states:

> The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

28 U.S.C. §1291.

As stated previously, in its Notice of Appeal and each successive Amended Notice of Appeal, ALS asserts this Court's jurisdiction is conferred by "28 U.S.C. §158 (a) or (b)." However, in its appellate brief, ALS contends jurisdiction is conferred by 28 U.S.C. §158(d). The Debtor does not address jurisdiction at all in her briefs.

5

entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

28 U.S.C. §158(a) (emphasis added). Section 158(b), which is inapplicable in this case, pertains to the jurisdiction of bankruptcy appellate panels.

28 U.S.C. §158(d) states that "*[t]he courts of appeals* shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section." 28 U.S.C. § 158(d) (emphasis added).

Review of the aforementioned statutes shows Section 158(d) *cannot* confer jurisdiction on this Court, as this Court is not a court of appeal. Rather, jurisdiction in this district court is governed by Section 158(a). *See, e.g., Matter of Topco, Inc.*, 894 F.2d 727, 734-35 & n.12 (5th Cir. 1990) (Section 158(a) grants *district courts* jurisdiction to review orders and decrees from bankruptcy judges, while 158(d) grants *courts of appeals* jurisdiction to review *final* orders of district courts). Thus, for jurisdiction to exist in this matter, it must exist pursuant to Section 158(a).

In the context of a bankruptcy proceeding, the Fifth Circuit has explained:

A [bankruptcy] case need not be appealed as a "single judicial unit" at the end of the entire bankruptcy proceeding, but the order must constitute a " 'final determination of the rights of the parties to secure the relief they seek in this suit,'" or the order must dispose of a discrete dispute within the larger bankruptcy case for the order to be considered final.

*In re Orr*, 180 F.3d 656, 659 (5th Cir. 1999), *citing Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1155 (5th Cir.1988) (internal citations omitted). As the Fifth Circuit explained in *In re Moody*, 817 F.2d 365, 368 (5th Cir. 1987), "a bankruptcy proceeding is over when an order has been entered that ends a discrete judicial unit in the larger case." *See also Matter of England*, 975 F.2d 1168, 1172 (5th Cir.1992) (in the context of bankruptcy cases, finality

6

"is contingent upon the conclusion of an adversarial proceeding within the bankruptcy case, rather than the conclusion of the entire litigation.")

In the instant case, the Bankruptcy Court denied ALS's objection to the Debtor's Chapter 13 Plan and confirmed the Plan on July 18, 2007. The Bankruptcy Court then considered a motion for reconsideration, which again set forth ALS's argument that the Lease Agreement created a true lease. After consideration of the motion for reconsideration, the Bankruptcy Court granted the motion on procedural grounds, but denied the motion on substantive grounds. Thereafter, the Bankruptcy Court entered an Amended Order confirming the Chapter 13 Plan on January 17, 2008. Considering the record in this matter, this Court concludes the Bankruptcy Court's denial of ALS's objection and confirmation of the plan on July 18, 2007 and January 17, 2008 – and the Bankruptcy Court's denial of ALS's motion for reconsideration on substantive grounds – qualifies as a "final determination of the rights of the parties to secure the relief they seek in this suit" and disposes of a discrete dispute within the larger bankruptcy case.

Considering the foregoing, this Court concludes the Bankruptcy Court's July 31, 2007 and January 17, 2008 Orders confirming the Chapter 13 Plan are final orders immediately appealable as of right pursuant to 28 U.S.C. §158(a).

### III.    Standard of Review

A bankruptcy court's findings of fact are reviewed by the district court under a "clearly erroneous" standard. *In re CPDC, Inc.*, 337 F.3d 436, 441 (5th Cir. 2003), *citing Century Indem. Co. v. NGC Settlement Trust (In re National Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir.2000). Conclusions of law, and mixed questions of fact and law, are reviewed *de novo*. *In re CPDC, Inc.*, 337 F.3d at 441. "If a finding is not supported by substantial evidence, it will be found to be clearly erroneous."

7

*In re Westcap*, 230 F.3d at 725, citing Wright & Miller, 9A Federal Practice & Procedure, §2585, p. 576 (1995). When a finding of fact is premised on an improper legal standard, that finding loses the insulation of the clearly erroneous standard and is subject to full de novo review. *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001) ("the clear error standard does *not* apply to findings of fact resulting from application of an incorrect legal standard."), citing *Fabricators, Inc. v. Technical Fabricators, Inc. (Matter of Fabricators, Inc.)*, 926 F.2d 1458, 1464 (5th Cir.1991).

Although the parties contend the issues on appeal are mixed questions of fact and law, this Court concludes the only matter before this Court – whether the Lease Agreement creates a security interest – is a purely legal question. Therefore, this court's review of the Bankruptcy Court's ruling is *de novo*.

IV.   **Law and Analysis**

The crux of this appeal is whether the Lease Agreement creates a security interest. ALS argues the Lease Agreement creates a "true lease," while the Debtor contends the Lease Agreement "create[s] a security interest in the vehicle as opposed to a true lease." The Bankruptcy Court agreed with the Debtor, concluding the instrument is a "financed lease" that creates a security interest in the vehicle.[5]

---

[5] La. Rev. Stat. §9:3306(12)(b) defines a "financed lease" as follows:

> (b) After January 1, 1990 a "financed lease" for purposes of this Chapter means a lease entered into on or after that effective date *that is classified as a security interest as provided under R.S. 10:1-201(35)*.

La. Rev. Stat. §9:3006(12)(b) (West 2008) (emphasis added). La. Rev. Stat. §9:3306(26)(b) defines a "true lease" as follows:

> (b) A true lease also means a lease entered into after January 1, 1990 *that is not classified as a security interest as provided under R.S. 10:1-201(35)*.

La. Rev. Stat. §9:3306(26)(b) (West 2008) (emphasis added).

8

The United States Supreme Court has stated "[t]he existence, nature and extent of a security interest in property is governed by state law." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). *See also In re Bailey*, 326 B.R. 156, 160 (W.D. Ark. 2005) ("To determine whether an agreement represents a sale or a lease, the bankruptcy court must look to applicable state law."). The parties agree Louisiana law governs the issue of whether the Lease Agreement is a true lease or creates s security interest in the vehicle.

A.    **La. Rev. Stat. §10:1-201(37) (2006) and La. Rev. Stat. 10:1-203 (2008)**

At the time the lease was executed by the parties, Louisiana Revised Statute §10:1-201(37) governed the issue of whether a transaction created a lease or a security interest.[6]  Section 10:1-201(37) provided:

> Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

---

La. Rev. Stat. 10:1-201(35) defines security interest as:

> (35) "Security interest" means an interest in personal property or fixtures, created by contract, which secures payment or performance of an obligation. "Security interest" includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Chapter 9. [FN2] The right of a seller or lessor of goods to retain or acquire possession of the goods is not a "security interest," but a seller or lessor may also acquire a "security interest" by complying with Chapter 9. The retention or reservation of title by a seller of goods notwithstanding perfection of the sale is limited in effect to a reservation of a "security interest." A lien or privilege created by operation of law is not a "security interest." *Whether a transaction in the form of a lease creates a "security interest" is determined pursuant to R.S. 10:1-203.*

La. Rev. Stat. §10:1-201(35) (West 2008) (emphasis added).

Considering the foregoing, this Court concludes the Bankruptcy Judge's conclusion that the Lease Agreement is a "financed lease" is synonymous with a finding that the Lease Agreement creates a security interest.

[6] Section 10:1-201(37) was adopted from a provision of the Uniform Commercial Code. This Court notes Louisiana has adopted most of the Uniform Commercial Code and codified it in Title 10 of the revised statutes. See *Schwegmann Bank & Trust Co. of Jefferson v. Falkenberg*, 931 F.2d 1081, 1083 (5th Cir. 1991).

9

(a)     the original term of the lease is equal to or greater than the remaining economic life of the goods;

(a)     the original term of the lease is equal to or greater than the remaining economic life of the goods;

(b)     the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

(c)     the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease; or

(d)     the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease.

A transaction does not create a security interest merely because it provides that

(a)     the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into;

(b)     the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods;

(c)     the lessee has an option to renew the lease or to become the owner of the goods;

(d)     the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed; or

(e)     the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

La. Rev. Stat. §10:1-201(37) (West 2006) (re-designated by 2006 Act No. 533, §1).

In 2006, La. Rev. Stat. §10:1-201(37) was revised. The revision did not change the law but

10

simply removed from the statute the specific provisions distinguishing a lease from a security interest.[7] That portion of the statute was given its own statute, Louisiana Revised Statute §10:1-203, which is entitled "Lease Distinguished from Security Interest."[8]

---

[7] The comments to the re-designated statute, La. Rev. Stat. §10:2-103, state:

> This section is substantively identical to those portions of former Section 1-201(37) that distinguished "true" leases from security interests, except that the definition of "present value" formerly embedded in Section 1-201(37) has been placed in Section 1-201(28).

La Rev. Stat. §10:1-203 (West 2006) (comments).

[8] Section 10:1-203 states as follows:

**§1-203. Lease distinguished from security interest**

(a)      Whether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case.

(b)      A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:

     (1)      the original term of the lease is equal to or greater than the remaining economic life of the goods;

     (2)      the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

     (3)      the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease; or

     (4)      the lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease.

(c)      A transaction in the form of a lease does not create a security interest merely because :

     (1)      the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into;

     (2)      the lessee assumes risk of loss of the goods;

     (3)      the lessee agrees to pay, with respect to the goods, taxes, insurance, filing,

11

In its brief, ALS cites the former version of the law contained in La. Rev. Stat. §10:1-201(37), which was in effect at the time the Lease Agreement was executed, while the Debtor cites the re-designated version of the statute currently in effect, noting the re-designated version of the statute "does not appear to change prior law." It is not clear to this Court whether the Bankruptcy Court applied Section 10:1-201(37) or Section 10:1-203. Nevertheless, this Court concludes it is unnecessary to determine which version of the law the Bankruptcy Court applied, as the substance of the law under either provision is the same. For purposes of this ruling, because La. Rev. Stat. §10:1-201(37) was in effect at the time the Lease Agreement was executed, this Court concludes the

---

recording, or registration fees, or service or maintenance costs;

(4) the lessee has an option to renew the lease or to become the owner of the goods;

(5) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed; or

(6) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

(d) Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease if the option is not exercised. Additional consideration is not nominal if:

(1) when the option to renew the lease is granted to the lessee, the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed; or

(2) when the option to become the owner of the goods is granted to the lessee, the price is stated to be the fair market value of the goods determined at the time the option is to be performed.

(e) The "remaining economic life of the goods" and "reasonably predictable" fair market rent, fair market value, or cost of performing under the lease must be determined with reference to the facts and circumstances at the time the transaction is entered into.

La. Rev. Stat. §10:1-203 (West 2008) (as re-designated by 2006 Act No. 533, §1).

12

former version of the substantive law as codified in La. Rev. Stat. §10:1-201(37) is applicable to the issues in this case.

**B.    Jurisprudence Interpreting La. Rev. Stat. §10:1-201(37)**

It appears there are no Louisiana cases interpreting either Section 10:1-201(37) or the re-designated version of the statute – Section 10:1-203 – nor are there any Fifth Circuit cases on point. However, because Louisiana adopted Section 10:1-201(37) from the Uniform Commercial Code, this Court can look for guidance to other jurisdictions that have adopted identical UCC sections. *See, e.g., Schwegmann Bank & Trust Co. of Jefferson v. Simmons,* 880 F.2d 838, 841 (5th Ci.r1989) ("We apply Louisiana law in this diversity case but we also look for guidance to other jurisdictions that have adopted the identical UCC sections"), *citing Bricks Unlimited, Inc. v. Agee,* 672 F.2d 1255, 1258 (5th Cir.1982) (holding it was unnecessary to decide whether to apply Louisiana or Mississippi negotiable instrument law since both states had adopted the identical UCC provisions).

In support of its argument the Lease Agreement creates a security interest, the Debtor cites *In re Bailey,* 326 B.R. 156 (W.D. Ark. 2005). In *In re Bailey,* Missouri law governed the issue of whether the lease agreement between the parties was a sale or a lease. The applicable law was a Missouri statute that mirrored the then-current version of Section 1-201(37) of the Uniform Commercial Code.[9] Noting the revision of Section 1-201(37) "shifts the focus away from the intent of the parties and toward the economic realities of the transaction," the court set forth the analytical framework under the statute, as follows:

> The court must first ask whether the debtor has a right to terminate the purported lease prior to expiration of its term. A provision in a contract requiring the lessee to remain financially liable to the lessor for payments that become due after the

---

[9] This Court notes the Missouri statute at issue in *Bailey* is identical to the statute at issue in the instant case.

13

termination date does not constitute the right to terminate under the statute. If the debtor does not have a right to terminate, the court then examines whether any of the four enumerated conditions have been satisfied. If so, the parties have entered into a security agreement as a matter of law.

If there is no right to terminate but also none of the four conditions apply, the court cannot find that, as a matter of law, the contract constitutes a security agreement. However, the analysis does not end here. The court must further examine the specific facts of the case to determine whether, despite failing the bright line test, the "economics of the transaction" still suggest a security interest.

*In re Bailey*, 326 B.R at 162, *citing Hoskins*, 266 B.R. at 160 (internal citations omitted). Thus, a lease creates a security interest only if (1) the lessee does not have the right to terminate the lease; and (2) one of the four enumerated requirements listed under Section 10:1-201(37) is satisfied.

Applying this framework to the facts in *Bailey*, the *Bailey* court found that because the Debtor did not have a legal right to cease payments and walk away from the lease without liability for the deficiency – the debtor was liable for three months' lease payments if he terminated the lease early – the Debtor did not have a right to terminate under the purported lease. 326 B.R. at 163. The court then considered whether any of the four enumerated conditions listed in the statute applied and found that the fourth condition was applicable: the lessee had an option to become the owner of the goods for nominal additional consideration upon compliance with the lease agreement. *Id.*

In determining "nominal value," the court reasoned "the test is whether 'the option price is so low that the lessee will certainly exercise it and will, in all plausible circumstances, leave no meaningful reversion for the lessor.'" *In re Bailey*, 326 B.R. at 163. Citing Section 1-201(37)(x) of the Illinois Uniform Commercial Code, the *Bailey* court further explained:

Section 1-201(37)(x) of Illinois' Uniform Commercial Code strives to delineate whether an option price is nominal. It provides, in pertinent part, that additional consideration is nominal if "it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised." This section

14

codifies what is traditionally known as the "economic realities" test by focusing on whether the lessee has, given all the facts and circumstances, no reasonable alternative but to exercise the purchase option. *In other words, if only a fool would fail to exercise the option, the option price is considered nominal and the transaction revealed to be a disguised sale.*

*Id.* at 163 (emphasis added) (internal citations omitted). Utilizing this test, the *Bailey* court concluded that an option price constituting merely 13%-14% of the fair market value of the goods when the lease expired constituted nominal additional consideration.[10] *Id.* at 163-64.

Concluding that the Debtor could not terminate the lease agreements and the consideration to purchase was nominal, the *Bailey* court held the transactions between the debtor and the creditor were sales for security and not leases as a matter of law. *Id.* at 164.

## C.     The Bankruptcy Court's Ruling

In the instant case, the Bankruptcy Court found the Lease Agreement in question is a "financed lease" as opposed to a "true lease," overruling ALS's argument that the Lease Agreement is a true lease. In so ruling, the Bankruptcy Court determined that although the Debtor could terminate the lease early, she could not terminate her *obligations* under the lease. In support of this finding, the Bankruptcy Court cited Paragraph 24 of the Lease Agreement, entitled "Early Termination," which requires that, to terminate the Lease Agreement early, the Debtor pay (1) a fee of $350, plus (2) the difference, if any, between the unpaid adjusted capitalized cost and the vehicle's fair market value, plus (3) "all other amounts then due under the lease." The Court interpreted "all other amounts then due under the lease" to include the remaining lease payments, referencing

---

[10] The Court further noted that "[t]he lack of a rational alternative is made more evident still by reviewing the contractual payment schedule. After completion of fifty monthly payments totaling $318,920.00 for Agreement 1 and $230,204.48 for Agreement 2, no reasonable lessee would cede the cows if they could be purchased for a payment equivalent to only three months' rent." *In re Bailey*, 326 B.R. at 163.

15

Paragraph 8 of the Lease Agreement, which states:

8. **EARLY TERMINATION:** You may have to pay a substantial charge if you end this Lease early. <u>The charge may be up to several thousand dollars.</u> The actual charge will depend upon when the Lease is terminated. The earlier you end the Lease, the greater this charge will be.

In discussing the interplay between Paragraphs 24 and 8, the Bankruptcy Judge reasoned:

There's also a provision in here that says the actual charge for early termination depends on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be, which seems to me to be that that takes into about the rest of the lease payments. Because if you terminate earlier, you're going to have a whole lot of lease payments.[11]

In response to an argument from counsel for ALS that "all other amounts then due under the lease" does *not* include the remaining lease payments but includes only *arrearages* owed by the Debtor up to the date of termination, the Bankruptcy Judge replied: "The problem I'm having is that, if it's only for arrearages, [Paragraph 8] would make no sense . . . . . If you end the lease early, you're not going to have very much in arrearages."[12] Thus, the Bankruptcy Judge determined that because the Debtor is still obligated to make payments after the termination date, her obligations under the lease do not end. Additionally, the Bankruptcy Judge also noted that, pursuant to the statute, whether or not a lease is a "true lease" or a "financed lease" depends on the circumstances of the case. After considering the facts of the case, and, particularly, the language obligating the Debtor to pay higher fees should she terminate the lease at the beginning of the lease period, the Bankruptcy Judge determined the Lease Agreement in question is a "financed lease."

---

[11] *See* Transcript of July 18, 2007 Bankruptcy Court Hearing, attached as Exhibit "5" to ALS's Notice of Appeal, Doc. 1, at p. 6, ll. 17-23.

[12] *Id.* at p. 7, ll. 14-16.

16

Additionally, the Bankruptcy Judge overruled ALS's objection that it be recognized as the owner of the vehicle in question without discussion, apparently on grounds the objection was not included by ALS in a previous filing.

With the foregoing in mind, the Court addresses the specific issues raised on appeal.

**D.    Issues on Appeal**

1.    **The Bankruptcy Court abused its discretion in failing to declare the Lease Agreement was a true lease agreement and not a secured transaction**

ALS contends the Bankruptcy Court abused its discretion in failing to declare the Lease Agreement was a true lease agreement and not a "secured transaction." Specifically, ALS contends that, because the Debtor had the right to terminate the Lease Agreement early, the debtor does not satisfy the two-part test required by Section 10:1-201(37).[13]

First, this Court notes the statute which governs this issue – La. Rev. Stat. §10:1-201(37) – governs the precise issue of *whether a lease creates a security interest*. The statute does not discuss "true leases," "financed leases," or whether the lessee or lessor becomes the owner of the lease item. As has been set forth herein, the Bankruptcy Court declared the Lease Agreement is a "financed lease," which is tantamount to declaring the Lease Agreement creates a security interest. *For purposes of this ruling, however, this Court will determine only the legal issue at hand, of whether the Lease Agreement in question creates a security interest.*

After consideration of the evidence and argument of counsel, this Court concludes the Lease Agreement creates a security interest. Review of the provisions of the Lease Agreement show that

---

[13] ALS appears to concede that the option price to purchase the vehicle at the end of the lease period – $206 – is nominal.

17

although the Debtor could terminate the Lease Agreement early, she could not terminate her *obligations* under the Lease Agreement without paying a substantial amount. Indeed, pursuant to Paragraph 24 of the Lease Agreement, the Debtor would still be obligated to pay a penalty of $350, any depreciated value of the vehicle, and "all other amounts then due under the lease." This Court concludes the Bankruptcy Court's interpretation of "all other amounts then due under the lease" includes remaining lease payments is supported by the language contained in Paragraph 8 of the Lease Agreement, which states that "[t]he earlier you end the lease, the greater this charge is likely to be."

This Court agrees with the Bankruptcy Court that the amount the Debtor would owe if she chose to terminate the Lease Agreement early is *directly tied* to how much she would owe on the remaining balance, which, as the Bankruptcy Judge noted, would be *higher* at the beginning of the lease period. Therefore, to accept ALS's argument that the phrase "all other amounts then due under the lease" to include only arrearages -- which would be *lower* at the beginning of the lease period -- would appear to render Paragraph 8 meaningless. Indeed, under the clear provisions of the Lease Agreement, the Debtor is put on notice that, should she terminate the lease at the beginning of the lease term, she may be required to pay *thousands of dollars* in payments to ALS. Regardless of what these amounts would be called, the economic reality of the transaction is that the Debtor's obligations under the Lease Agreement would not be terminated if the Debtor chose to terminate the lease early, and particularly not if she chose to terminate the lease at the beginning of the lease term.

It is well-established "a provision in a contract requiring the lessee to remain financially liable to the lessor for payments that become due after the termination date does not constitute the right to terminate under the statute." *In re Bailey*, 326 B.R at 162, *citing Hoskins*, 266 B.R. at 160.

18

Here, the provisions of the Lease Agreement — when read together — show the Debtor would be liable to pay money to ALS if she chose to terminate the lease early, and would be liable for substantial amounts if she chose to terminate the lease at the beginning of the lease term. Therefore, this Court concludes the Debtor does not have the right to terminate her *obligation* under the statute, as recognized by courts interpreting this statute.

Turning its attention now to whether the Debtor satisfies one of the four enumerated conditions of Section 10:1-201(37), the Court concludes the fourth factor is met, that is, the amount required to purchase the vehicle at the end of the lease term — $206 — is nominal and "only a fool" would fail to exercise the option to purchase the vehicle for that amount at the end of the lease. Therefore, this Court concludes the Debtor satisfies the two-part test established under La. Rev. Stat. §10:1-201(37).

Additionally, the facts of this case and the economic realities of the transaction suggest the Lease Agreement creates a security interest. Here, the parties contemplated that the Lease Agreement may be deemed a "financed lease" as shown by the language in the Lease Agreement to that effect, which specifically provides for the assumption of ownership of the vehicle by ALS in such circumstances. The parties negotiated this and other terms in the Lease Agreement, and ALS has not argued the provisions are against public policy.

Thus, this Court concludes the Debtor did not have the right to terminate her obligations under the Lease Agreement; the option price to purchase the vehicle at the end of the lease period is nominal; and the economic realities of the transaction suggest a security interest was created. Accordingly, this Court concludes the Lease Agreement created a security interest pursuant to La. Rev. Stat. §10:1-201(37).

19

## 2. The Bankruptcy Court abused its discretion in failing to declare ALS as the owner of the vehicle

ALS contends the Bankruptcy Court abused its discretion in failing to declare ALS as the owner of the vehicle.[14] ALS relies on La. Rev. Stat. §9:3310(B) in support of this argument. Section 9:3310(b) states:

> B. Notwithstanding the fact that a financed lease creates a security interest under Chapter 9 of the Louisiana Commercial Laws, *the lessor under a properly perfected financed lease shall retain full legal and equitable title and ownership in and to the leased equipment until such time as the lessee exercises his option or complies with his obligation to purchase the leased equipment from the lessor as provided under the lease agreement.* The provisions of this Chapter shall further not affect present taxation of financed leases.

La. Rev. Stat. §9:3310(B) (West 2008) (emphasis added). The Debtor takes no position on the issue of which party owns the vehicle.

First, this Court notes the Bankruptcy Court did not rule on this issue, that is, the Bankruptcy Court did not declare whether the Debtor or ALS is the owner of the vehicle. Therefore, there is no ruling on this matter from which to appeal and ALS has not demonstrated extraordinary circumstances requiring the Court to consider the issue.[15] *See, e.g., Doleac ex rel. Doleac v. Michalson,* 264 F.3d 470, 492 (5th Cir. 2001) (courts of appeals generally do not entertain issues not raised in, or decided by, the lower court, but will do so "in extraordinary instances when such consideration is required to avoid a miscarriage of justice").

---

[14] This Court notes neither party has indicated which party is identified as the owner of the vehicle on the vehicle's title. In any event, the Lease Agreement — the contract between the parties · controls the issue of ownership.

[15] Although ALS argued this issue at the hearing on July 18, 2007, the Bankruptcy Court overruled the objection on this ground, stating the argument had not been included in ALS's objection. It is unclear to the Court whether ALS re-urged the argument in its motion for reconsideration. In any event, as the Bankruptcy Court has not substantively ruled on this issue, this Court make no ruling on this issue at this time.

20

Despite the foregoing, this Court notes the following provision in the Lease Agreement which appears to belie ALS's argument:

> 31. **TRUE LEASE:** It is declared to be the intent of the Lessee, Lessor, and the Assignee that this Lease shall for all purposes constitute a "true lease" of the Vehicle subject to the Louisiana Lease of Movables Act (La. R.S. §§ 9:3301, *et seq.*), and not a "financed lease" or a secured transaction/security interest under the Louisiana Commercial Laws (La. R.S. §§ 10:1-101, *et seq.*). *However, if for some reason, a court or arbitrator may determine that this Lease constituted a "financed lease", <u>you grant Lessor and Assignee a security interest in the Vehicle, and in all proceeds derived from this Vehicle.</u>*

Thus, if a court determines the Lease Agreement creates a security interest (*i.e.*, is a "financed lease"), Paragraph 31 of the Lease Agreement states the Debtor must grant ALS a security interest in the vehicle. This Court notes the obligation of the Debtor to grant a security interest in the vehicle to ALS *would not arise if ALS owned the vehicle*. Thus, despite the language of Section 9:3310(b) – which would appear to grant ownership of the vehicle to ALS even if the Lease Agreement is deemed to be a financed lease – by the very terms of its own contract, ALS has provided for a contrary result.

Nevertheless, as previously stated, this Court makes no ruling on this issue, as the Bankruptcy Court did not substantively rule on this issue in the Bankruptcy Court, and ALS's request for relief in connection with this issue is DENIED.

### 3. The Bankruptcy Court abused its discretion in failing to declare that the Debtor owed arrears in the amount of $775.51

The Court notes this issue was not ruled on by the Bankruptcy Court. Therefore, there is no ruling for this Court to review with respect to this issue. *See, e.g., Doleac ex rel. Doleac v. Michalson*, 264 F.3d at 492; *see also Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339-40 (5th Cir. 2005) (addressing scope of appellate review on a summary judgment order and finding scope

21

of review is "limited to matters presented to the district court."). Because this matter was not presented to the Bankruptcy Court, and because ALS has not demonstrated "extraordinary circumstances" requiring review of the claim herein, ALS's request for relief in connection with this issue is DENIED.

## V.    Conclusion

For the reasons stated herein, the Court AFFIRMS the decision of the Bankruptcy Court. This Court DENIES ALS's request for relief in connection with ALS's motion for an order declaring it the owner of the vehicle, as well as ALS's motion for an order declaring the Debtor is in arrears to ALS in the amount of $775.51, and remands to the Bankruptcy Court for determination. Accordingly, the Court REMANDS this case to the Bankruptcy Court for further proceedings consistent with this ruling. Pursuant to Rule 8016(a) of the Federal Rules of Bankruptcy Procedure, the Clerk of Court shall enter the judgment following receipt of this Memorandum Opinion and Order.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this _____ day of _____, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

22